**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAX BIRMINGHAM,

        Plaintiff,

                              Case No: 1:20-cv-00329

v.

                         **Oral argument requested**

DANA NESSEL,

        Defendant.

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR**</u>
<u>**DECLARATORY AND INJUNCTICE RELIEF**</u>

<u>**PARTIES**</u>

1. *Pro Se* Plaintiff-petitioner Max Birmingham brings forth this civil action to

challenge the constitutionality of MICH. COMP. LAWS 750.532 ("Seduction statute"). Plaintiff is

challenging the Seduction statute since it is unconstitutional because:

    A.  The Seduction statute violates the First Amendment because it is substantially
         overbroad;

    B.  The Seduction statute violates the void-for-vagueness doctrine;

    C.  The Seduction statute violates the Due Process Clause; and

    D.  The Seduction statute violates the Equal Protection Clause.

2. Plaintiff is bringing forth a First Amendment challenge the Seduction statute

under the overbreadth doctrine. Overbreadth is a judicially created doctrine designed to prevent

the chilling of protected expression. *Massachusetts v. Oakes*, 491 U.S. 576 (1989). The doctrine

of overbreadth derives from the recognition that an unconstitutional restriction may deter

protected speech by parties not before the court and thereby escape judicial review. *Central*

1

*Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980).

3. Defendant-respondent, Attorney General of Michigan Dana Nessel is appropriate under Federal Rule of Civil Procedure ("FRCP") Rule 5.1(a)(2). She is sued in her official capacity.

## STANDING

4. Plaintiff has standing to bring forth a First Amendment challenge the Seduction statute under the overbreadth doctrine. "The overbreadth doctrine constitutes an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to "chill" the exercise of rights guaranteed." *Leonardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990).

5. The Supreme Court of the United States has permitted a panoply of third parties permitted third parties to assert the legal rights of others, such as:

A. Clients *(See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720–21 (1990) (holding that an attorney has standing to assert the constitutional rights of his clients in order to contest disciplinary proceedings for receiving contingent fees);

B. Customers (*See Craig v. Boren*, 429 U.S. 190, 191–97 (1976) (allowing a vendor standing, on equal protection grounds, to challenge a state law that prohibited the sale of beer to males under age 21, but to females only under age 18);

C. Jurors (*See Powers v. Ohio*, 499 U.S. 400, 410–16 (1991) (granting a criminal defendant standing, on equal protection grounds, to assert the rights of prospective jurors to not be peremptorily challenged on the basis of race);

D. Patients (*See Griswold v. Connecticut*, 381 U.S. 479, 481 (1965) (allowing a doctor standing in order to assert the constitutional rights of married persons seeking birth control); and

E. Voters (*See Bush v. Gore*, 531 U.S. 98 (2000) (per curiam) (holding that then-candidate George W. Bush had standing to assert the equal protection rights of Florida voters).

6. The overbreadth doctrine allows Plaintiff standing to challenge the Seduction statute. As Plaintiff has standing, other claims may be asserted.

## JURISDICTION

7.   This Court has subject matter jurisdiction over this First Amendment challenge pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.

8.   Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–02, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

## VENUE

9.   Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein have occurred, and will continue to occur, in this district.

## FACTUAL BACKGROUND

### MCL 750.532 ("Seduction statute")

10. MICH. COMP. LAWS 750.532 ("Seduction statute") states:

> Punishment—Any man who shall seduce and debauch any unmarried woman shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by fine of not more than 2,500 dollars; but no prosecution shall be commenced under this section after 1 year from the time of committing the offense.

### The overbreadth doctrine focuses on application to real-world conduct

11. The Seduction statute is substantially overbroad as it compromises First Amendment protection of parties not before the court. Under the Seduction statute, a man and a woman may consensually engage in sex, and the man may be prosecuted. Assistant Ingham County Prosecutor Sam Smith acknowledged that the Seduction statute, as written, allows for the prosecution of consensual sex between consenting unmarried adults.[1] Sex between two

---

[1] *See* Eugene Volokh, *Recent Michigan Prosecutions for "Seducing and Unmarried Woman*, *available at* http://volokh.com/2010/06/08/recent-michigan-prosecutions-for-seducing-an-unmarried-woman/ (last accessed Mar. 31, 2020) (hereinafter "*Volokh*").

consenting adults is a constitutionally protected act.

12. In determining whether a statute's overbreadth is substantial, the courts consider statute's application to real-world conduct, not fanciful hypotheticals. *United States v. Williams*, 553 U.S. 285, 301–02. Accordingly, the Court have has held that an overbreadth claimant bears the burden of demonstrating, "from the text of [the law] and from actual fact" that substantial overbreadth exists. *Virginia v. Hicks*, 539 U.S. 113 (2003).

### i.    Application of the Seduction statute with real-world conduct

13. In 2018, three former Michigan State University ("MSU") football players (Mr. Donnie Corley; Mr. Josh King; Mr. Demetric Vance) accepted to a plea bargain for violating the Seduction statute. Each of the aforementioned players acknowledged they knew that the accuser was unmarried when they engaged in oral sex with her.[2] Each of the former players was adamant that the sex was consensual.[3]

14. At the sentencing of the former MSU football players:

> MS. MARY CHARTIER (counsel for Mr. Vance): "I want the record to be made clear that Mr. Vance did not rape anyone on that night. He pled guilty to Seduction, which is having sex with an unmarried woman, which is what happened. And which is what he told the police happened. But I do not believe that I can stand in this courtroom while Mr. Vance is repeatedly labeled a rapist."
>
> JUDGE ROSEMARIE AQUILINA: "Do you think you did anything wrong?"
>
> MR. DEMETRIC VANCE: "No, your honor."
>
> JUDGE ROSEMARIE AQUILINA: "Why are we here?"
>
> MS. MARY CHARTIER: ". . . I am speaking on behalf of myself about, again, things that are verified facts from the record. … But I do believe it is important that Mr.

---

[2] *See* Jonathan Oosting and Jennifer Chambers, *Arcane Seduction law used in ex-MSU players' plea deal*, *available at* https://www.detroitnews.com/story/news/local/michigan/2018/04/04/arcane-seduction-law-used-ex-msu-players-plea-deal/33556649/ (last accessed Mar. 31, 2020) (hereinafter "*Oosting and Chambers*").

[3] MLive, *Judge rebukes ex-MSU football players in 'seduction' plea*, YouTube (Jun. 6, 2018), https://www.youtube.com/watch?v=5F4ZidQl2EM.

Vance not just have to stand here and be labeled a rapist when that is not what happened."

JUDGE ROSEMARIE AQUILINA: "Well, classify it what, how you might counsel, but sex without consent is rape in this country. Sir, did you do something wrong?"

MR. DEMETRIC VANCE: "No, your honor."

JUDGE ROSEMARIE AQUILINA: "No?"

MS. MARY CHARTIER: "The issue is not one of consent. Seduction does not require consent or lack of consent in order for the elements to be met."

JUDGE ROSEMARIE AQUILINA: "Did you have sex with an unmarried woman?"

MR. DEMETRIC VANCE: "Yes, your honor."

JUDGE ROSEMARIE AQUILINA: "Did you know she didn't want sex."

MR. DEMETRIC VANCE: "She was consensual."[4]

15. Judge Rosemarie Aquilina accused Mr. Demetric Vance of rape even though he was not charged with rape.

16. Mr. Demetric Vance and his counsel repeatedly denied that he is a rapist.

17. Judge Rosemarie Aquilina took the position that the Seduction statute is for rapists, yet there are laws for rape (MCL 750.250b, 750.250c, 750.250d, 750.250e).

18. Mr. Demetric Vance, as well as Mr. Donnie Corley and Mr. Josh King, admitted to having consensual sex with an unmarried woman and were forced to accept a plea bargain because their actions constituted the elements of a crime.

### ii. Other instances of application of the Seduction statute with real-world conduct

19. Moreover, a legal scholar has noted that a search of the Seduction statute resulted in over 30 notes between 2002 and 2008.[5]

---

[4] MLive, *Demetric Vance denies being a rapist*, YouTube, (Jun. 6, 2018), https://www.youtube.com/watch?v=2ZrN9ZxErRY.
[5] *Volokh*.

5

**The Seduction statute is not enforced as a regular law but is rather used as a plea bargaining tool**

20. Ingham County Prosecutor Carol Siemon stated:

> "The use of 'seducing and debauching an unmarried female' as a plea is one that prosecutors have used consistently, but infrequently in the State of Michigan. The law itself is archaic and while the statute itself is valid, it certainly was originally enacted in a bygone era. The plea to seduction is a tool that we have as prosecutors, but it is an imperfect tool. It allows the criminal justice system to acknowledge the victim, and it provides an incentive for that offender to plea, in particular, because it's not an offense that requires that they register as a sex offender."[6]

21. "[A]ssistant Ingham County Prosecutor Sam Smith … explained that in the case that appeared in the newspaper, simple seduction wasn't the original charge. The man was charged with a more serious offense. The seduction plea became, as Smith put it, the "resolution" to the case. That's most often how it's employed, Smith said — as a "*reasonable resolution*."[7]

22. "Smith stopped short of saying that consensual sex between consenting unmarried adults would never be prosecuted as a crime, but admitted it would be rare. Of course if one of the parties is married, the crime becomes adultery, but that's rarely prosecuted, either, Smith said."[8]

**A state senator introduced a bill in 2007 to repeal the Seduction statute**

23. State Sen. Steve Bieda co-sponsored a bill in 2007 to repeal the Seduction statute. Sen. Bieda said "We've got a lot of statutes on the books that aren't used any longer and that look ridiculous on their face and are probably *unconstitutional*."[9]

---

[6] *See* Emily Lawler, *Ex-MSU football player deal highlights archaic 'seduction' law*, *available at* https://www.mlive.com/news/2018/04/in_wake_of_ex-msu_football_pla.html (last accessed Mar. 31, 2020) (hereinafter "*Lawler*"); *see also Oosting and Chambers* (which contains part of the quote).

[7] John Schneider, *It's a Crime*, Lansing State Journal, Feb. 15, 2000, at 1B.

[8] *Id.*

[9] *Oosting and Chambers* (emphasis added).

24. "Rep. Peter Lucido, R-Shelby Twp., is a member of the Michigan Law Revision Commission, a group charged with cleaning up the old laws on Michigan's books." Rep. Lucido stated "I've never heard of the crime. I've done criminal law for 30 years. Why have old laws on the books that you're never going to enforce?"[10]

### Many states have abolished seduction laws

25. In its definition of "seduction" Black's Law Dictionary states that "[m]any states have abolished this offense for persons over the age of legal consent."

26. In 2017, Oklahoma abolished its seduction law.[11]

## LEGAL FRAMEWORK

### The overbreadth doctrine allows Plaintiff to bring forth a claim to challenge the constitutionality of the Seduction statute

27. The Supreme Court of the United States has held that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

28. In order to prevail on a facial attack on the constitutionality of a statute on grounds of the overbreadth doctrine, the challenger must show either that every application of the statute creates impermissible risk of suppression of ideas, or that the statute is substantially overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protection of parties not before the court. *New York State Club Ass'n v. City of New York*, 487 U.S. 1 (1988).

---

[10] *Lawler*.
[11] *See* Nolan Clay, *Oklahoma repeals antiquated seduction, slander laws*, *available at* https://oklahoman.com/article/5547759/oklahoma-repeals-antiquated-seduction-slander-laws (last accessed Mar. 31, 2020).

**The Seduction Statute violates the First Amendment because it is substantially overbroad**

29. The First Amendment protects the freedom of speech and the freedom of association. U.S. Const. Amend. I.

30. The freedom of speech covers a vast amount of activities, which include but are not limited to: using certain offensive words and phrases to convey political messages (*Cohen v. California*, 403 U.S. 15 (1971)); contributing money to political campaigns (*Buckley v. Valeo*, 424 U.S. 1 (1976)); advertising commercial products and professional services (with some restrictions) (*Virginia Board of Pharmacy v. Virginia Consumer Council*, 425 U.S. 748 (1976); *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)); and engaging in symbolic speech, (e.g., burning the American flag in protest) (*Texas v. Johnson*, 491 U.S. 397 (1989); *United States v. Eichman*, 496 U.S. 310 (1990)).

31. "The Constitution extends special safeguards to the privacy of the home, just as it protects other special privacy rights." *United States v. Orito*, 413 U.S. 139, 142 (1973). The Court has protected the right to read even obscene materials unprotected by the First Amendment in the privacy of the home. *Stanley v. Georgia*, 394 U.S. 557, 565 (1969).

**The Seduction statute violates the void-for-vagueness doctrine**

32. The Seduction statute violates the void-for-vagueness doctrine since it is not clear what someone must do or say to avoid breaking the law.

33. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Grayned v. City of Rockford*, 408 U.S. 104 (1972). These standards are not to be mechanically applied. Rather,

"[t]he degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

**The Seduction statute violates the Due Process Clause**

34. In *Eisenstadt v. Baird*, the U.S. Supreme Court expanded the right to privacy beyond the marriage relation (as set forth in *Griswold*) and ruled that unmarried persons have a right to engage in consensual sex. 405 U.S. 438 (1972). The Court invalidated an ordinance which prohibited unmarried persons from purchasing contraceptives. *Id.* at 485.

35. In *Lawrence v. Texas*, the Supreme Court of the United States held that having consensual sex is a right to liberty, which is protected by the Due Process Clause. 539 U.S. 564 (2003). We are "free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution" *Id.* The Court invalidated a sodomy statute which prevented two adults from engaging in consensual sex. *Id.* at 566.

36. In *Lawrence*, the Court exclaimed that "[i]t suffices for us to acknowledge that adults may choose to enter upon this [sexual] relationship in the confines of their homes and their own private lives and still retain their dignity as free persons." *Id.* at 567.

**The Seduction statute violates the Equal Protection Clause**

37. The Seduction statute violates the Equal Protection Clause because it punishes men on the basis of their gender for engaging the same behavior as women.

38. The Seduction statute states, in part, "Any *man* … unmarried *woman* … be guilty of a felony."

### The Seduction statute is not narrowly tailored

39. If the First Amendment means anything,  it means that regulating speech must be a last—not first—resort." *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002). Thus, the Court applies "strict scrutiny" to content-based regulations of fully protected speech; this means that it requires that such regulations "promote a compelling interest" and use "the least restrictive means to further the articulated interest." *Sable Communications of California v. FCC*, 492 U.S. 115, 126 (1989).

40. The Seduction statute should be subject to strict scrutiny because it regulates content–consensual sex. Notwithstanding, the Seduction statute does not even meet the standard of intermediate scrutiny; *i.e.*, scrutiny that is "midway between the 'strict scrutiny' demanded for content-based regulation of speech and the 'rational basis' standard that is applied—under the Equal Protection Clause—to government regulation of nonspeech activities*." Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 790 (1994).

41. The Seduction statute prohibits "any man from seduc[ing] or debauch[ing] any unmarried woman." There is not a compelling interest is for the government to prohibit consensual sex between a man and an unmarried woman. Notwithstanding, there is not a "significant" or "substantial" or "important" interest for the government to prohibit consensual sex between a man and an unmarried woman.

### *Reductio Ad Absurdum*

42. If the purpose of the Seduction statute is to subject to *reductio ad absurdum* (reduction to absurdity). Assistant Ingham County Prosecutor Sam Smith explained that the Seduction statute is used to reach a "*reasonable resolution*", which means to come plea bargain, whenever they think a defendant is guilty of a crime (a sex crime or otherwise) but doubt that they'll be able to

prove it.

43. With regard to the Seduction statute, a "reasonable resolution" to a prosecutor may not be a reasonable resolution to a defendant. At a plea hearing over the Seduction statute, Judge Aquilina asked Mr. Demetric Vance if he did anything wrong. Mr. Demetric Vance declared that he did nothing wrong.[12]

44. Hence, the Seduction statute allows prosecutors to reach a "reasonable resolution" which they deem to be reasonable. This means that if they think a defendant is guilty, they may coerce said defendant into a plea bargain by way of the facially unconstitutional Seduction statute.

45. Allowing prosecutors to coerce defendants into pleading guilty because they think a defendant is guilty is the antithesis of the American legal system, as it violates notions fairness and justice. This is an absurdity.

46. "Seduction shouldn't be criminal just so that prosecutors find it easier to reach plea bargains in rape cases. Otherwise, why not just make all sex — or for that matter all breathing — a crime? That will make it even easier for prosecutors to reach a "reasonable resolution" plea bargain whenever they think a defendant is guilty of a crime (a sex crime or otherwise) but doubt that they'll be able to prove it."[13]

47. Law Professor Curt Benson stated "If they were to start enforcing that [Seduction] law, how many of us would be guilty? Just about every high school senior in the country would be guilty."[14]

48. The Seduction statute has led to absurd results, and will continue leading to absurd results

---

[12] *See supra* note 4.

[13] *Volokh.*

[14] George Hunter, *Ex-MSU football players avoid jail in sex-related case*, *available at* https://www.detroitnews.com/story/sports/college/michigan-state-university/2018/06/06/michigan-state-football-players-sentencing/35754021/.

until it is invalidated.

**Practical implications of challenging the unconstitutional Seduction statute**

49. First, Ingham County Prosecutor Carol Siemon acknowledged that the Seduction statute provides an incentive for that offender to plea because it is not an offense that requires that they register as a sex offender.

50. If defendants are incentivized to plead guilty to the statute, said defendants are not going to challenge the constitutionality of the statute.

51. If defendants did want to challenge the statute under an as-applied First Amendment challenge, prosecutors may drop the charges.[15] Thus, the defendant would not be able to challenge the statute as it would be moot with regard to the case. And said defendant would have to challenge the statute under the overbreadth doctrine.

52. Second, there is asymmetry of information between prosecutors and defendants with regard to plea bargains. "Defendants have no right to discovery in plea bargaining. So in order to avoid harsher sentences, they often take deals that result in criminal records without ever seeing the evidence against them."[16]

53. The ABA tacitly acknowledged that the imbalance between prosecutors and defendants with regard to plea bargains that it released an ethics opinion. On May 9, 2019, the ABA Standing Committee on Ethics and Professional Responsibility released Formal Opinion 486, "Obligations of Prosecutors in Negotiating Plea Bargains for Misdemeanor Offenses".[17]

---

[15] *Id.*

[16] Liane Jackson, *Change Agents: A new wave of reform prosecutors upends the status quo*, *available at* https://www.abajournal.com/magazine/article/change-agents-reform-prosecutors (last accessed Mar. 31, 2020); *see also* Emily Yoffee, *Innocence Is Irrelevant: This is the age of the plea bargain–and millions of Americans are suffering the consequences*, *available at* https://www.theatlantic.com/magazine/archive/2017/09/innocence-is-irrelevant/534171/ (last accessed Mar. 31, 2020).

[17] *Available at* https://www.abajournal.com/files/aba_formal_opinion_486.pdf.

54. Third, some defendants may want to contest accepting a plea bargain but may have issues with access to justice, insofar as access to an attorney.[18] In Michigan, there is the Michigan Indigent Defense Counsel. However, courts determine who is and who is not entitled to appointed counsel.[19] Hence, there is the realistic chance that a defendant facing trial, without the resources of being able to afford counsel, will accept a plea bargain, even if they personally (and truly) maintain their innocence.[20]

**Ongoing and irreparable harm**

55. In the future, it is likely that there will be sex between men and unmarried women in Michigan. This is "common sense." With regard to common sense, Justice Souter wrote "[t]he need for independent proof varies with the point that has to be established . . . . But we must be careful about substituting common assumptions for evidence when the evidence is as readily available as public statistics and municipal property evaluations, lest we find out when the evidence is gathered that the assumptions are highly debatable." *Tennessee Secondary School Athletic Ass'n v. Brentwood Academy*, 551 U.S. 291, 300 (2007).

56. Ingham County Prosecutor Carol Siemon noted that the Seduction statute is used consistently. Hence, the Seduction statute will be used in the future at some point.[21]

57. If Plaintiff does not obtain the requested relief, a person or persons will be deprived of

---

[18] *See generally* Jason Tashea, *Prosecutors must maintain ethical conduct during misdemeanor plea deals, ABA ethics opinion says*, *available at* https://www.abajournal.com/news/article/prosecutors-must-maintain-ethical-conduct-during-misdemeanor-plea-deals-says-new-ethics-opinion ("Hundreds of times weekly, prosecutors negotiate plea deals with misdemeanor defendants who lack counsel and may agree to unfair dispositions," says Barbara S. Gillers, chair of the ABA Standing Committee on Ethics and Professional Responsibility.") (last accessed Mar. 31, 2020).

[19] *Available at* https://michiganidc.gov/faq/#toggle-id-2.

[20] *See supra* notes 4 and 12.

[21] *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321 (2000).

their constitutional rights under the First Amendment to the United State Constitution and
will suffer irreparable harm. There is no adequate remedy at law.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## FIRST AMENDMENT

58. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though
fully set forth herein.

59. If the Court has extended these aforementioned safeguards, as noted in *Georgia*, to acts
that are not protected by the First Amendment, it logically follows that acts which are protected
by the First Amendment are also afforded the safeguards in the privacy of the home. These
safeguards extend to a man and a woman engaging in consensual sex. 394 U.S. 557, 565 (1969).

60. Federal courts have inherent equitable authority to order injunctive and declaratory relief
to remedy violations of the Constitution. *Armstrong v. Exceptional Child Ctr.*, Inc., 575 U.S.
320, 327 (2015).

## SECOND CLAIM FOR RELIEF

## VOID-FOR-VAGUENESS DOCTRINE

61. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though
fully set forth herein.

62. The Seduction statute because uses the term "seduce and debauch" but it does not
define it. Accordingly, it is not clear as to what this means, and what act or acts the statute is
clearly and unambiguously prohibiting.

63. Federal courts have inherent equitable authority to order injunctive and declaratory relief
to remedy violations of the Constitution. *Armstrong v. Exceptional Child Ctr.*, Inc., 575 U.S.

320, 327 (2015).

### THIRD CLAIM FOR RELIEF

### DUE PROCESS CLAUSE

64. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

65. The Seduction statute violates the right to liberty, which is protected by the Due Process Clause.

66. Federal courts have inherent equitable authority to order injunctive and declaratory relief to remedy violations of the Constitution. *Armstrong v. Exceptional Child Ctr.*, Inc., 575 U.S. 320, 327 (2015).

### FOURTH CLAIM FOR RELIEF

### EQUAL PROTECTION CLAUSE

67. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

68. The Seduction statute does not proscribe the same application to women, only men. As such, it is discriminatory on its face against men.

69. Federal courts have inherent equitable authority to order injunctive and declaratory relief to remedy violations of the Constitution. *Armstrong v. Exceptional Child Ctr.*, Inc., 575 U.S. 320, 327 (2015).

### FIFTH CLAIM FOR RELIEF

### THE SEDUCTION STATUTE IS NOT NARROWLY TAILORED

70. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

71. The Seduction statute is not narrowly tailored to meet the government's interest. Moreover, it is not clear what exactly the government's interest is with regard to the Seduction statute.

72. Federal courts have inherent equitable authority to order injunctive and declaratory relief to remedy violations of the Constitution. *Armstrong v. Exceptional Child Ctr.*, Inc., 575 U.S. 320, 327 (2015).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully request that this Court enter judgment in his favor grant the following relief:

1. Issue a declaratory judgment that MICH. COMP. LAWS 750.532 ("Seduction statute") is facially unconstitutional, and invalidate the statute.

2. Preliminary and permanent injunctions enjoining the enforcing, investigating, questioning, arresting, charging, or any other use of MICH. COMP. LAWS 750.532 ("Seduction statute") against any person or persons.

3. Grant any and all other such relief that this Court deems just and equitable.

Respectfully submitted,

  /s/ Max Birmingham
Max Birmingham (D.C. Bar # 1618157)
PRO SE
323 E 108th St.
Apt. 24
New York, NY 10029
(617) 756–5473
maxbirmingham@gmail.com

Dated: May 13, 2020

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing has been filed on May 13, 2020, via the CM / ECF system, and that the foregoing has been served via U.S. mail on Defendant.

Respectfully submitted,

  /s/ Max Birmingham
Max Birmingham (D.C. Bar # 1618157)
**PRO SE**
323 E 108th St.
Apt. 24
New York, NY 10029
(617) 756–5473
maxbirmingham@gmail.com

Dated: May 13, 2020