### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MAX BIRMINGHAM,

       Plaintiff,

                            Case No: 1:20-cv-00329

v.

                            **Oral argument requested**

DANA NESSEL,

       Defendant.

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………….…………………....…………iv

INTRODUCTION……………………………………………………………………….1

ARGUMENT……………………………………………………………………………..2

I.      LEGAL STANDARD…………….……………………………….………………2

II.     "ANY MAN" IS THE CLASS WITH WHOM  THE SEDUCTION STATUTE
        IS UNCONSTITUTIONAL………...………………………………………………4

        A.  Mr. Josh King Pleaded Guilty to the Seduction Statute and He is Not a
            Resident of the State of Michigan…………………………………………...5

        B.  Mr. Donnie Corley and Mr. Demetric Vance Pleaded Guilty to the
            Seduction Statute Even Though They Were Not Residing in the State of
            Michigan at the Time of Their Please to the Seduction Statute…………..6

III.    DEFENDANT DOES NOT CONTEST THAT THERE IS A CREDIBLE
        THREAT OF PROSECUTION UNDER THE SEDUCTION STATUTE…....…….6

        A.  There Are Two Current Instances Where There is a Credible Threat of
            Prosecution Under the Seduction Statute……………......………………..7

IV.     THE SEDUCTION STATUTE ALLOWS PROSECUTORS UNFETTERED
        DISCRETION AS TO WHO THEY MAY CHARGE UNDER THE
        STATUTE…………………………………………………………………………8

        A.  Prosecutors Make Statements Freely Admitting That They Have
            Unfettered Discretion Under the Seduction Statute……....……………12

        B.  Defendant Has Not Made a Valid Argument as to How the Seduction
            Statute is Distinguished from Rape Laws……....…………….…………13

V.      DEFENDANT DOES NOT ADDRESS THE OVERBREADTH DOCTRINE,
        AND INSTEAD RELIES ON INAPPLICABLE CASE LAW……………..….…15

        A.  *Lujan v. Defenders of Wildlife* focused on federal law not applying
            extraterritorially……………………………………...……………………15

        B.  *Prime Media, Inc. v. City of Brentwood* focused on a civil ordinance, not a
            criminal statute, which the court found was sufficiently tailored to pass
            constitutional scrutiny………………………………...……………….…15

**VI.**   **PLAINTIFF HAS STANDING AND THIS CASE PRESENTS A CLEAR AND IMMEDIATE CONTROVERSY UNDER ARTICLE III**…………….…………17

**VII.**   **DEFENDANT MAKES NO ARGUMENT AS TO STANDING UNDER THE OVERBREADTH DOCTRINE**……………………………………………………17

**VIII.**   **DEFENDANT MAKES NO ARGUMENT AS TO THE  APPLICATION OF THE SEDUCTION STATUTE**…………………………………..……………...18

**IX.**   **ASSUMING *ARGUENDO* THAT THIS IS A PRE-ENFORCEMENT CHALLENGE, PLAINTIFF STILL HAS STANDING**…………………………20

**CONCLUSION**…………………………………………….…………………………………...21

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*ACLU v. Alvarez*,
　　679 F.3d 583 (7th Cir. 2012)……………………………………………………………20

*Adams v. Bain*,
　　679 F.2d 1213 (4th Cir. 1982)…………………………………………………...……3

*American Telecom Co., LLC v. Republic of Lebanon*,
　　501 F.3d 534 (6th Cir. 2007)…………………………………………………………...2

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)……………………………………………………………………3

*Babbitt v. United Farm Workers Nat'l Union*,
　　442 U.S. 289 (1989)……………………………………………………...6, 7, 21

*Barrows v. Jackson*,
　　346 U.S. 249 (1953)………………………………………………..………………...5

*Broadrick v. Oklahoma*,
　　413 U.S. 601 (1973)……………………………………………………...……18

*Cartwright v. Garner*,
　　751 F.3d 752 (6th Cir. 2014)………………………………………………………...2

*City of Chicago v. Morales*,
　　527 U.S. 41 (1999)………………………………………..….…………………...8

*Coates v. City of Cincinnati*,
　　402 U.S. 611 (1971)………………………………………………..…..…...8

*DLX, Inc. v. Commonwealth of Kentucky*,
　　381 F.3d 511 (6th Cir. 2004)………………………………………………………...4

*Doe v. Bolton*,
　　410 U.S. 179 (1973)……………………………………………………..…..7

*Eisenstadt v. Baird*,
　　405 U.S. 438 (1972)……………………………………………………..…...16

*Epperson v. Arkansas*,
　　393 U.S. 97 (1968)……………………………………………………..…...4, 7

*Farrell v. Burke*,
  449 F.3d 470 (2d Cir. 2006)……………………………………………………...20

*Forsyth County, Ga. v. Nationalist Movement*,
  505 U.S. 123 (1992)………………………………………………….…………....8

*Goldhamer v. Nagode*,
  621 F.3d 581 (7th Cir. 2010)……………….…………………….……………....7

*Griswold v. Connecticut*,
  381 U.S. 479 (1965)……………….…………………………….……………....16

*Kowalski v. Michigan State University et al*,
  1:18-cv-00390……………………………….……………………...*passim*

*Lawrence v. Texas*,
  539 U.S. 558 (2003)……………………………………..……………….....16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)……………………………………………….….……15

*Mangual v. Rotger-Sabat*,
  317 F.3d 45 (1st Cir. 2003)……………………………….……………...4

*McGlone v. Bell*,
  681 F.3d 718 (6th Cir. 2012)……………………………………………..6, 7

*Members of the City Council v. Taxpayers for Vincent*,
  466 U.S. 789 (1984)…………………………………………...…….......7

*Mobil Oil Corp. v. Attorney General of Virginia*,
  940 F.2d 73 (4th Cir. 1991)……………………………………………...2

*Moskal v. United States*,
  498 U.S. 103 (1990)……………….……………………………….......13

*New York State Club Ass'n, Inc. v. City of New York*,
  487 U.S. 1 (1998)……………………………...………….......18, 19

*Pennsylvania v. West Virginia*,
  262 U.S. 553 (1923)……………………………………….…………..4

*Peterson v. Nat'l Telecomm. & Info. Admin.*,
  478 F.3d 626 (4th Cir. 2007)…………………….………….…………...18

*Pierce v. Soc'y of Sisters*,
    268 U.S. 510 (1925)…………………………………………………………….…...4

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*,
    822 F.2d 1390 (6th Cir. 1987)……………………………………………………4

*Prime Media, Inc. v. City of Brentwood*,
    485 F. 3d 343 (6th Cir. 2007)……………………………..…………………15, 16

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999)…………………………………………………20

*Sable Communications of California v. FCC*,
    492 U.S. 115 (1989)……..………................................................................17

*Secretary of State of Maryland v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984)………………………...…………………………..……...7

*Smith v. Jefferson Cty. Bd. Of Sch. Comm'rs*,
    641 F.3d 197 (6th Cir. 2011) (en banc)………………..…………….…..……...5

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)………………………………………………………...2

*Steffel v. Thompson*,
    415 U.S. 452 (1974)……..………………………………….………...4, 7, 21

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2344 (2014)…………………………………..…….…..…...7, 21

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994)...……………………………………………..2

*Virginia v. American Booksellers Ass'n*,
    484 U.S. 383 (1988)…………………….…………………………….…..4, 7

*Williams v. Pryor*,
    220 F.Supp. 2d 1257 (N.D. Ala. 2002)……………………………..…..…16, 17

*Wright v. United States*,
    82 F.3d 419 (6th Cir. 1994)…...………………………………………….3

**STATE CASES**

*People v. De Fore*,
31 N.W. 585 (1887)……………………………….………………….....…....13, 14

*People v. Deneweth*,
14 Mich. App. 604 (1968)…………………………………………..……....14


**UNITED STATES CONSTITUTION**

U.S. CONST. amend. I……………………………………………….……...*passim*

U.S. CONST. amend. XIV……………………………………………………*passim*


**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)……………………………………………………………4


**STATE STATUTES**

MICH. COMP. LAWS § 566.132(1)(c)…………………….……………………14

MICH. COMP. LAWS § 750.250b………………………………………………13

MICH. COMP. LAWS § 750.250c………………………………………………13

MICH. COMP. LAWS § 750.250d………………………………………………13

MICH. COMP. LAWS § 750.250e………………………………………………13

MICH. COMP. LAWS § 750.532………………………………………………*passim*


**OTHER AUTHORITIES / NEWS ARTICLES**

Google Scholar,
*Available at*
https://scholar.google.com/scholar_case?about=9662702263904373958&q=People+v.+D
efore,+ 31+N.W.+585+(1887)&hl=en&as_sdt=6,33 (last accessed Jun. 30, 2020)……..14

John Schneider,
*It's a Crime*,
Lansing State Journal, Feb. 15, 2000, at 1B…………………………………..……12

Kara Berg,
    *AG's office to investigate sex assault complaint against 3 former MSU basketball players*, *available at*
    https://www.lansingstatejournal.com/story/news/2020/02/06/michigan-state-basketball-sexassault-rape-lawsuit-attorney-general-msu/4680042002/ (last accessed Jun. 30, 2020)……………………………………………………………………………..10

Matt Wenzel,
    *Former Michigan State player Josh King signs with same JUCO as Donnie Corley and Demetric Vance*, *available at*
    https://www.mlive.com/spartans/2018/02/former_michigan_state_player_j.html (last accessed Jun. 30, 2020)….…………………………………………………………………6

MSUSpartans.com,
    *Available at* https://msuspartans.com/sports/football/roster/josh-king/1628 (last accessed Jun. 30, 2020)…………………………………………………………………...……………6

News 10,
    *MSU police confirm Brock Washington case sent to AG's office*, *available at*
    https://www.wilx.com/content/news/MSU-police-confirm-569224411.html (last accessed Jun. 30, 2020)…………………………………………………………………...9

Paula Lavigne and Nicole Noren,
    *Michigan AG asked to investigate rape claim against MSU basketball player*, *available at* https://www.espn.com/mens-collegebasketball/story/_/id/28963357/michigan-attorney-general-asked-investigate-rape-claimmsubasketball-player (last accessed Jun. 30, 2020)…………………………………………………..……………..9, 12

## INTRODUCTION

Plaintiffs respectfully opposes Defendant's motion to dismiss. The complaint states a claim for declaratory and injunctive relief under and Plaintiff has standing to bring forth the claims because MICH. COMP. LAWS 750.532 ("Seduction statute") threatens an immediate and irreparable denial of constitutional rights, and has already chilled the exercise of their First Amendment rights, as well as violate the Fourteenth Amendment. Defendant's motion that the Court abstain from exercising its jurisdiction should also be denied because the federal constitutional issues cannot be eliminated by any construction of the statute and it would simply delay an adjudication to protect the constitutional rights that Plaintiff asserted.

There is no deficiency in Plaintiff's complaint. Defendant's motion to dismiss is, in large part, a recitation of Defendant's "Response to Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction." (ECF No. 24). Defendant has done little to engage with the facts Plaintiff stated or analyze the constitutional claims Plaintiff asserts.

The Seduction statute has to be challenged under the overbreadth doctrine, otherwise it will never be challenged. The Seduction statute is used as a "plea bargaining tool." Ingham County Prosecutor Carol Siemon stated, in part, "*The plea to seduction is a tool that we have as prosecutors*, but it is an imperfect tool. It allows the criminal justice system to acknowledge the victim, *and it provides an incentive for that offender to plea, in particular, because it's not an offense that requires that they register as a sex offender.*" (ECF No. 13 at 12) (emphasis added). "[A]ssistant Ingham County Prosecutor Sam Smith … explained that in the case that appeared in the newspaper, simple seduction wasn't the original charge. The man was charged with a more serious offense. The seduction plea became, as Smith put it, the "resolution" to the case. That's most often how it's employed, Smith said — as a "reasonable resolution." (*Id.* at 20). Thus, the

1

Seduction statute will remain on the books, violating people's rights. The overbreadth doctrine was created to allow people to challenge unconstitutional laws without having to personally face the consequences of going to jail or paying fines. "*Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.*" *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73, 75 (4th Cir. 1991) (emphasis added).

## ARGUMENT

### I.   LEGAL STANDARD

Whether a court has subject matter jurisdiction is a threshold issue that determines whether a plaintiff can bring their claims in a specific court. *American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In the case of a facial attack, the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.*

In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Defendant asserts a factual attack but does nothing more than make a bare conclusion. (ECF No. 27 at 8). "Here, Plaintiff bears the burden of establishing jurisdiction through the production of evidence demonstrating such, and this is a burden Plaintiff cannot bear." *Id.* There is no argument as to what the standard is, what evidence Defendant has, or why Plaintiff cannot meet the burden.

Plaintiff can and has met the burden to bring forth this challenge. Plaintiff has done so in his Complaint (ECF No. 1), First Amended Complaint (ECF No. 11), Memorandum in Support of the Motion for Preliminary Injunction (ECF No. 13), and Reply to Defendant's Response to the Motion for Preliminary Injunction (ECF No. 31). Plaintiff has also since filed a Motion for Leave (ECF No. 22) to file a Second Amended Complaint (ECF No. 23). Plaintiff's Complaint (ECF No. 1), First Amended Complaint (ECF No. 11), and Second Amended Complaint (ECF No. 23) each contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Jurisdiction must be established by a preponderance of the evidence. *Wright v. United States*, 82 F.3d 419 (6th Cir. 1996). A court considering a motion to dismiss assumes that the facts alleged in the complaint are true and views the complaint in the light most favorable to the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (court considering a motion to dismiss "contend[ing] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based" affords the plaintiff "the same procedural protection as [the plaintiff] would receive under a Rule 12(b)(6) consideration."). In Plaintiff's First Amended Complaint, Plaintiff asserts that Seduction statute since it is unconstitutional because it violates: (1) the First Amendment because it is substantially overbroad; (2) the void-for-vagueness doctrine; (3) the Due Process Clause; and (4) Equal Protection Clause. (ECF No. 11 at 1).

Defendant alleges that Plaintiff does not have standing because "[t]his is a pre-enforcement claim. There is no allegation that Birmingham has been arrested, is facing trial, has been convicted, or has pleaded guilty to any crime in the State of Michigan, let alone the crime of seduction." (ECF No. 27 at 11/ECF No. 24 at 10). There is no authority that says a plaintiff must be personally facing charges before asserting a challenge. In fact, courts allow pre-

enforcement challenges because in a free society, no one should have to be punished before they can challenge an unconstitutional law. *Epperson v. Arkansas*, 393 U.S. 97, 109–10 (1968). In 1923, the Supreme Court noted that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough. *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923).  In 1925, the Supreme Court heard a challenge to a law requiring minors to attend public school that would not take effect for two years. *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925).

In 1986, the Sixth Circuit heard Planned Parenthood of Cincinnati challenge a law the same day it went into effect and before it had been applied to anyone. *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1391-96 (6th Cir. 1987). In 1999, a newspaper reporter challenged a criminal defamation statute, even though that statute had never been enforced against the reporter, because it deterred the reporter from investigating government officials for criminal activities. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 53-54 (1st Cir. 2003). Plaintiff reasonably fears that his conduct is prohibited, and Plaintiff reasonably fears the threat of prosecution.

The Court has subject matter jurisdiction over this case. First, the Supreme Court has held "[w]e are not troubled by the pre-enforcement nature of this suit." *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988). In 1968, the Supreme Court invalidated a state law prohibiting the teaching of evolution even though "*there ha*[*d*] *never been even a single attempt by the State to enforce it*" for the forty years after the law was passed in 1928. *Epperson*, 393 U.S. at 109–10. Second, Plaintiff does not have to subject himself to prosecution to challenge the statute. "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Accordingly, Plaintiff does not have to be "subject to, has not been charged with, and has not violated" the Seduction statute in order to bring forth a challenge to it under the overbreadth doctrine.

## II.   "ANY MAN" IS THE CLASS WITH WHOM THE SEDUCTION STATUTE IS UNCONSTITUTIONAL

The Seduction statute criminalizes behavior by a certain class, which is men ("Any

4

man"). MICH. COMP. LAWS 750.532. The matters Defendant is involved in have men who are accused. Plaintiff is a man. Plaintiff is in same class as the men who are accused.

The Seduction statute states, in part, "Any man who shall seduce and debauch any unmarried woman shall be guilty of a felony . . ." MICH. COMP. LAWS 750.532. The Seduction statute does not only apply to state residents, and it would be absurd to argue so. This would mean that "any man" who is not a resident would be free to "seduce and debauch any unmarried woman" and escape prosecution simply because they are not a state resident. There is no textual basis for this argument. Additionally, statues criminal statutes do not focus on the residency of those accused. Rather, state criminal statues focus on whether the incident took place within the state's jurisdiction.

Defendant does not make an argument, but rather makes another bare conclusion when stating ""[E]ven when litigants have established a substantial injury from a government action, they 'cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed.'" *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d at 207 (6th Cir. 2011) (en banc) (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953))." (ECF No. 27 at 14/ECF No. 24 at 13). Defendant does not state that Plaintiff is not in the protected class. Moreover, Defendant does not state what the protected class is. Rather, Defendant just offered the above quote.

### A. Mr. Josh King Pleaded Guilty to the Seduction Statute and He is Not a Resident of the State of Michigan

"In 2018, three former Michigan State University ("MSU") football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) accepted to a plea bargain for violating the Seduction statute." (ECF No. 31 at 16). Mr. Josh King is a resident of the State of Illinois and

accepted a scholarship to play football at Michigan State University.[1] The incident in question in which he accepted a plea to the Seduction statute took place in Ingham County, Michigan.

### B. Mr. Donnie Corley and Mr. Demetric Vance Pleaded Guilty to the Seduction Statute Even Though They Were Not Residing in the State of Michigan at the Time of Their Pleas to the Seduction Statute

Mr. Donnie Corley and Mr. Demetric Vance were both in the State of Mississippi before they were ever charged with and pleaded guilty to Seduction. "The defensive end signed [Mr. Josh King] a national letter of intent to play at Coahoma Community College in Mississippi, joining Donnie Corley and Demetric Vance, whose signings with Coahoma were reported in January [2018]."[2]

### III.  DEFENDANT DOES NOT CONTEST THAT THERE IS A CREDIBLE THREAT OF PROSECUTION UNDER THE SEDUCTION STATUTE

Defendant does not address the credible threat of prosecution, and instead argues that this is a pre-enforcement claim.

> "Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 158-59 (internal citations omitted) (emphasis added). This is a pre-enforcement claim. There is no allegation that Birmingham has been arrested, is facing trial, has been convicted, or has pleaded guilty to any crime in the State of Michigan, let alone the crime of seduction." (ECF No. 27 at 4–5/ECF No. 24 at 4).

Plaintiff never having "been arrested, is facing trial, has been convicted, or has pleaded guilty to any crime in the State of Michigan, let alone the crime of seduction" is not pertinent to the standard of a credible threat of prosecution. This is contrary to the Sixth Circuit, which has held that "[p]laintiffs may have standing even if they have never been prosecuted or threatened

---

[1] *Available at* https://msuspartans.com/sports/football/roster/josh-king/1628 (Mr. Josh King's official Michigan State University football profile. (Listing Mr. King's "Hometown" as Darrien, Ill., and his "High School" as Hinsdale South") (last accessed Jun. 30, 2020).

[2] Matt Wenzel, *Former Michigan State player Josh King signs with same JUCO as Donnie Corley and Demetric Vance*, *available at* https://www.mlive.com/spartans/2018/02/former_michigan_state_player_j.html (last accessed Jun. 30, 2020).

with prosecution." *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) (citing standard in *Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979)). Moreover, Defendant is completely ignoring the overbreadth doctrine. "*The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges.*" *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984).

Under *American Booksellers Ass'n*, Plaintiff also clearly has standing to assert the rights of third parties because they are challenging the Seduction statute on its face:

> "[I]n the First Amendment context litigants are permitted to challenge a statute not because their own rights to free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Id.* at 392-93 (quoting *Secretary of State of Maryland v. Munson*, 467 U.S. 947, 956-57 (1984)).

The standard for credible threat of prosecution is that of a reasonable person. "When an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge." *Goldhamer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010). The Supreme Court has continuously held that so long as a plaintiff reasonably fears that the threat of prosecution, a plaintiff may bring forth a challenge to a criminal statute. *Epperson*, 393 U.S. 97 (1968), *Doe v. Bolton*, 410 U.S. 179 (1973), *Steffel*, 415 U.S. 452 (1974), *Babbitt*, 442 U.S. 289 (1979), *American Booksellers Ass'n*, 484 U.S. 383 (1988), *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2344 (2014).

Plaintiff reasonably fears that his conduct is prohibited, and Plaintiff reasonably fears the threat of prosecution.

## A.  There Are Two Current Instances Where There is a Credible Threat of Prosecution Under the Seduction Statute

In late March 2020, a woman told police that she was sexually assaulted by Mr. Brock

Washington, a former Michigan State University ("MSU") basketball player asked the Michigan attorney general's office (Defendant) to investigate her case. (ECF No. 31 at 5–6 (*see also* § B. There is a Credible Threat of Prosecution Under the Seduction Statute)).

In another instance, Ms. Bailey Kowalski has made a claim that three unnamed former Michigan State University men's basketball players engaged in similar conduct that three former Michigan State University football players engaged in and were charged under the Seduction Statute. (*Kowalski v. Michigan State University et al*, 1:18-cv-00390; *see also supra* ECF No. 31 at 5–8, § B. There is a Credible Threat of Prosecution Under the Seduction Statute).

## IV. THE SEDUCTION STATUTE ALLOWS PROSECUTORS UNFETTERED DISCRETION AS TO WHO THEY MAY CHARGE UNDER THE STATUTE

It is well established that individuals may challenge a law under the First Amendment based on allegations that the law is substantially overbroad or grants unfettered discretion to the government, even if there are instances in which the law may be constitutionally applied. *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (plurality); *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 132-33 (1992) (invalidating a licensing statute on its face because of its lack of standards to control officials' unfettered discretion in enforcement of the statute); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (invalidating a facially vague statute that specified no standard of conduct and thus authorized unbounded official discretion).

As noted above, the elements of the Seduction statute have been met with regard to the two current instances where there is credible threat of prosecution under the Seduction statute. (ECF No. 31 at 5–8, § B. There is a Credible Threat of Prosecution Under the Seduction Statute).

With regard to one of the aforementioned instances involving Mr. Washington, an accuser stated "[e]verything I saw was that I was completely out of it. I was basically when I

was unconscious when I was laying in the room. I was not aware of my surroundings. *There was no possible way I could give consent*," the woman told News 10."[3] The woman stated "on March 11 she met with assistant prosecuting attorney Sarah Pulda and was told that she had been "too intoxicated to prove that it [sexual contact] was forced."[4] "The statement shocked and angered the woman: "*That was the whole point of the charge, that I was too drunk to consent to what happened*," she said. "The prosecutor failed me completely. I have to take it into my own hands ... and hopefully get justice in the long run."[5] Consent is not an element of the Seduction statute.

The prosecutor did not explain why Mr. Washington was not charged under the Seduction statute. The elements of the Seduction statute are met. Mr. Washington's case is analogous to the case of the three former MSU football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) who pleaded guilty to Seduction. (ECF No. 11 at 4–5). Accordingly, if Mr. Washington were to be charged under the Seduction statute, the case would proceed to trial because the elements are met. Mr. Washington and the three former MSU football players ("a[ny] man"); who claim they had consensual oral sex ("seduce and debauch"); with their accuser ("any unmarried woman").

Defendant is currently investigating the claim against Mr. Washington.[6] Defendant can charge Mr. Washington under the Seduction statute. Since the elements of the Seduction statute are met, there is a credible threat of prosecution against Mr. Washington.

---

[3] News 10, *MSU police confirm Brock Washington case sent to AG's office*, *available at* https://www.wilx.com/content/news/MSU-police-confirm-569224411.html (last accessed Jun. 30, 2020) (emphasis added).

[4] Paula Lavigne and Nicole Noren, *Michigan AG asked to investigate rape claim against MSU basketball player*, *available at* https://www.espn.com/mens-collegebasketball/story/_/id/28963357/michigan-attorney-general-asked-investigate-rape-claim-msubasketball-player (last accessed Jun. 30, 2020) (hereinafter "*Lavigne and Noren*").

[5] *Id.* (emphasis added).

[6] *Id.*

With regard to one of the aforementioned instances involving Ms. Kowalski, she claims that three unnamed members of the Michigan State University ("MSU") men's basketball players raped her. (*Kowalski*, ECF No. 1 at *passim*). "Plaintiff was forcefully thrown face down on the bed, held in place so she could not move, while JD2 raped Plaintiff from behind. Plaintiff was crying, she could not move, nor could she speak. At no time did she consent to the sexual activity." (*Kowalski*, ECF No. 1 at 5). Consent is not an element of the Seduction statute.

The prosecutor did not explain why the three unnamed members of the MSU men's basketball were not charged under the Seduction statute. The elements of the statute were met. The three unnamed MSU men's basketball players (("a[ny] man"); who Ms. Kowalski claims raped her ("seduce and debauch"); any unmarried woman (Ms. Kowalski).

Defendant is currently investigating the claim by Ms. Kowalski against the three unnamed MSU men's basketball players.[7] Defendant can against the three unnamed MSU men's basketball players under the Seduction statute. Since the elements of the Seduction statute are met, there is a credible threat of prosecution against the three unnamed MSU men's basketball players. "Lansing Township Police Chief John Joseph and several Ingham County prosecutors met this week and determined the police department does not have the resources to investigate the case, Joseph said. Assistant Attorney General Danielle Bennetts will handle the case going forward, he said. [Ms. Kowalski's attorney Karen] Truszkowski said the case has been months in the making, and while she was aware it had been passed to the AG's office, she was not aware that decision would be made public."[8]

---

[7] Kara Berg, *AG's office to investigate sex assault complaint against 3 former MSU basketball players*, *available at* https://www.lansingstatejournal.com/story/news/2020/02/06/michigan-state-basketball-sex-assault-rape-lawsuit-attorney-general-msu/4680042002/ (last accessed Jun. 30, 2020).

[8] *Id.*

There is no reasonable argument as to why the three former MSU football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) were charged under the Seduction statute but Mr. Washington and the three unnamed MSU men's basketball players have not yet been charged under the Seduction statute. The case of the three former MSU football players is analogous to the case of Mr. Washington, and it is also analogous to the case of the three unnamed MSU men's basketball players.

A plausible reason for Mr. Washington and the three unnamed MSU men's basketball players not yet being charged under the Seduction statute is because Defendant is trying to determine if they can prove rape. If Defendant determines it cannot prove rape at trial (Mr. Washington and the three unnamed MSU men's basketball players, or as Prosecutor Siemon puts it, being "are unable to meet the burden of proof due to the nuances of statute and jury instructions." (*See infra* § A. Prosecutors Make Statements Freely Admitting That They Have Unfettered Discretion Under the Seduction Statute).

Defendant is now in a position of "heads I win, tails you lose" with Mr. Washington and the three unnamed MSU men's basketball players. If Defendant feels it can prove rape at trial, it will proceed with that charge. If Defendant feels it cannot prove rape at trial, it can use the Seduction statute as a cudgel to coerce Mr. Washington and the three unnamed MSU men's basketball players into plea bargains. Defendant completely ignores the fact that the elements of the Seduction statute are met with cases of both coerce Mr. Washington and the three unnamed MSU men's basketball players.

There is a credible threat of prosecution with the Seduction statute. With regard to Mr. Washington and the three unnamed MSU men's basketball players, Defendant has unfettered discretion to charge each of them so long as Defendant feels like doing so in their subjective

11

opinion since the elements of the Seduction statute are met in both cases.

### A. Prosecutors Make Statements Freely Admitting That They Have Unfettered Discretion Under the Seduction Statute

Prosecutors themselves have freely admitted they have unfettered discretion under the Seduction statute.

> "[A]ssistant Ingham County Prosecutor Sam Smith … explained that in the case that appeared in the newspaper, simple seduction wasn't the original charge. The man was charged with a more serious offense. The seduction plea became, as Smith put it, the "resolution" to the case. That's most often how it's employed, Smith said — as a "reasonable resolution." (ECF No. 13 at 12).

> "Smith stopped short of saying that consensual sex between consenting unmarried adults would never be prosecuted as a crime, but admitted it would be rare. Of course if one of the parties is married, the crime becomes adultery, but that's rarely prosecuted, either, Smith said."[9]

Even if it is "rare" to prosecute consensual sex between consenting unmarried adults as Assistant Prosecutor Smith states, it is still an admission that there is unfettered discretion. Why are some consenting unmarried adults who have consensual sex prosecuted under the Seduction s statute, but other consenting unmarried adults who have consensual sex not prosecuted. The reason for this is because the Seduction statute provides prosecutors with unfettered discretion.

With regard to the allegation against Mr. Washington, Ingham County Prosecutor Carol Siemon stated "[m]any, many cases fall into areas where we believe that an individual was indeed sexually assaulted, but also believe that we are unable to meet the burden of proof due to the nuances of statute and jury instructions."[10] Prosecutor Siemon did not explain why she would not pursue charging Mr. Washington under the Seduction statute. However, Defendant, who is currently investigating Mr. Washington, is able to charge Mr. Washington under the Seduction statute. In this case, all the elements of the Seduction statute are met. Prosecutor Siemon did note that there is a burden of proof "due to the nuances of statute and jury instructions." Prosecutor Siemon further admitted that the Seduction statute would not hold up at trial under the burden of proof. Prosecutor Siemon has stated:

---

[9] John Schneider, *It's a Crime*, Lansing State Journal, Feb. 15, 2000, at 1B.
[10] *Lavigne and Noren*.

12

The *plea to seduction* is a tool that we have as prosecutors, but it is an imperfect tool. It allows the criminal justice system to acknowledge the victim, and *it provides an incentive for that offender to plea*, in particular because it's not an offense that requires that they register as a sex offender. (ECF No. 13 at 4) (emphasis added).

Prosecutor Siemon herself acknowledged that it is a "plea to seduction." This is because Prosecutor knows it would be invalidated by a court if it were to be used at trial. (ECF No. 13 at 11, 12, 14).

The Seduction statute gives prosecutors unfettered discretion as to who they do and do not charge. This is clearly unconstitutional and Seduction statute needs to be invalidated.

### B. Defendant Has Not Made a Valid Argument as to How the Seduction Statute is Distinguished from Rape Laws

Consent is not an element of the Seduction statute. There are state laws which prohibit non-consensual sex. *See* MICH. COMP. LAWS §§§§ 750.250b, 750.250c, 750.250d, 750.250e. Defendant has not made an argument as to how the Seduction statute is distinguished from rape laws which prohibit non-consensual sex.

Defendant makes yet another bare conclusion when alleging that the Seduction statute does not include consensual sex. "The crime specifically does not include consensual intercourse. *People v. De Fore*, 31 N.W. 585, 589 (1887)." (ECF No. 27 at 7/ECF No. 24 at 7). Defendant makes no argument as to the text of the Seduction statute. Consent is nowhere to be found in the text of the Seduction statute. "Any man who shall seduce and debauch any unmarried woman shall be guilty of a felony . . ." MICH. COMP. LAWS 750.532. "In determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108 (1990).

Defendant cites *People v. De Fore*, a case from 1887 but does not explain how the Seduction statute does not prohibit consensual sex in its plainly legitimate sweep. Defendant does not cite the text of the case or what the court held in *De Fore*. Research indicates that *De Fore* involved a man having intercourse with a woman through the promise of

marriage.[11] *De Fore* was cited in the following instances: "Under this statute the offense is committed if the man has carnal intercourse, to which the woman assented, if such assent was obtained by a promise of marriage, made by the man at the time, and to which, without such promise, she would not have yielded."[12] "And it has been held that, when the female submitted. through a promise of marriage conditioned upon the act resulting in pregnancy, the crime was committed."[13] Defendant has also made an argument that the Seduction statute contains a "broken promise" requirement, despite there being no textual basis for this in the statute. (ECF No. 27 at 12/ECF No. 24 at 11).

Defendant also fails to acknowledge that *De Fore* is no longer good law, as it was overturned by a later case. In *People v. Deneweth*, the court held that "[e]ven if the defendant had not taken the stand, in a criminal case the defendant is entitled to have the presumption of innocence weighed against the people's entire case no matter how strong it may be and to a jury resolution of at least those facts which he does not judicially admit." 14 Mich. App. 604, 608 (1968). The *Deneweth* court is stating that an allegation of a 'broken promise' is not sufficient evidence.

Moreover, an allegation of a 'broken promise' of marriage is not sufficient. Under the Statute of Frauds, a promise of marriage must be in writing. MICH. COMP. LAWS 566.132 (1)(c) ("In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise: An agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry.").

---

[11] *Available at* https://scholar.google.com/scholar_case?about=9662702263904373958&q=People+v.+Defore,+31+N.W.+585+(1887)&hl=en&as_sdt=6,33 (last accessed Jun. 30, 2020).

[12] *Id.*

[13] *Id.*

## V.   DEFENDANT DOES NOT ADDRESS THE OVERBREADTH DOCTRINE, AND INSTEAD RELIES ON INAPPLICABLE CASE LAW

### A.   *Lujan v. Defenders of Wildlife* focused on federal law not applying extraterritorially

Defendant cites inapplicable cases as "controlling or most appropriate authority." (ECF No. 27 at *passim/*ECF No. 24 at *passim*). Defendant cites *Lujan v. Defenders of Wildlife* (504 U.S. 555 (1992)), which is a case that was not focusing on the overbreadth doctrine. In *Lujan*, the Supreme Court held that plaintiffs did not have standing to challenge regulations jointly issued by the U.S. Secretaries of the Interior and Commerce because the Endangered Species Act did not apply to projects outside of the United States and Defenders of Wildlife sued. " I am persuaded that the Government is correct in its submission that § 7(a)(2) *does not apply to activities in foreign countries.* As with all questions of statutory construction, *the question whether a statute applies extraterritorially* is one of congressional intent." *Lujan*, 504 U.S. at 585 (emphasis added).

*Lujan* is not applicable to the matter before the Court because the Seduction statute is applied in the United States, and it is not being applied extraterritorially. Plaintiff has never made an argument about applying the Seduction statute extraterritorially.

### B.   *Prime Media, Inc. v. City of Brentwood* focused a civil ordinance, not a criminal statute, which the court found was sufficiently tailored to pass constitutional scrutiny

Defendant also relies on *Prime Media, Inc. v. City of Brentwood* (485 F. 3d 343 (6th Cir. 2007), which is easily distinguished from the matter before the Court. In Prime Media, the court found that plaintiffs did not have standing because the ordinance at issue "ha[s] been found to be *sufficiently tailored to pass constitutional scrutiny.*" *Id.* at 348 (emphasis added).

*Prime Media* focuses on a town ordinance, not a criminal statute, and the court noted that

15

"aggrieved party is entitled to some degree of judicial review before the ordinance will be enforced against it." *Id.* at 346. The reason for bringing forth this matter before the Court is to seek judicial review of the Seduction statute. The Seduction statute has not been reviewed for its constitutionality by any court before this matter.

Together, two U.S. Supreme Court decisions, *Griswold v. Connecticut* and *Eisenstadt v. Baird*, established that both married and single individuals have the right to obtain and use contraceptives. In *Griswold*, Justice Douglas found that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that create zones of privacy, thus protecting marital sexual intimacy from unjustified state intervention. 381 U.S. 479, 484 (1965).

> Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen. The Third Amendment in its prohibition against the quartering of soldiers "in any house" in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *Id.*

Thus, Justice Douglas found protection within the right of privacy for marriage, which necessarily includes protection of marital sexual intimacy. It took the Court another seven years before it considered whether the protection of sexual intimacy extended to unmarried partners. *Eisenstadt*, 405 U.S. 438 (1972).

The Supreme Court in *Lawrence v. Texas* held petitioner's "right to liberty under the Due Process Clause gives them the full right to engage in their [private sexual] conduct without intervention of the government." 539 U.S. at 558, 578 (2003). In *Williams v. Pryor*, the court found that "plaintiffs have shown that the fundamental right of privacy, long-recognized by the Supreme Court as inherent among our constitutional protections, incorporates a right to sexual

16

privacy." 220 F.Supp. 2d 1257, 1259 (N.D. Ala. 2002).

Courts apply the strict scrutiny standard when a fundamental constitutional right is infringed. Here, the constitutional right to privacy (sexual privacy) is being infringed upon by the state. The state bears the burden to "promote a compelling interest" and use "the least restrictive means to further the articulated interest." *Sable Communications of California v. FCC*, 492 U.S. 115, 126 (1989).

Defendant has not yet stated what the compelling interest is with regard to the Seduction statute. Defendant not yet either stated how the Seduction statute is the least restrictive means to further the articulated interest. As Defendant has not yet stated what the compelling interest is, Defendant has not argued how the Seduction statute is narrowly tailored. This is because Defendant knows that the Seduction statute is not narrowly tailored, and that it fails constitutional scrutiny.

## VI.   PLAINTIFF HAS STANDING AND THIS CASE PRESENTS A CLEAR AND IMMEDIATE CONTROVERSY UNDER ARTICLE III

Plaintiff has standing to bring forth his claims under the overbreadth doctrine. (*ECF No. 31 at 3–7; see generally § I. The Overbreadth Doctrine Gives Plaintiff Standing to Bring Forth this Suit*). The allegations of the Plaintiff's complaint and the averments in his filings (i.e., ECF No. 13 (Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction); ECF No. 31 (Plaintiff's Reply to Defendant's Response to the Motion for Preliminary Injunction); *inter alia*) demonstrate the existence of a live controversy and establish that Plaintiff is a proper party with standing to bring forth his claims.

## VII.   DEFENDANT MAKES NO ARGUMENT AS TO STANDING UNDER THE OVERBREADTH DOCTRINE

Defendant completely ignores the overbreadth doctrine and argues that Plaintiff does not

have standing because this is not an "as-applied" challenge.  (ECF No. 27 at 4–7/ECF No. 24 at 3–6) (*see generally §§§ A. Birmingham has sustained no injury in fact., B. Birmingham cannot establish a causal connection between any hypothetical injury and the conduct complained of because standing requires the actions of a third part., II. Birmingham's appeal to the overbreadth doctrine does not give him standing.*). Defendant argues that Plaintiff "does not have standing to challenge a Michigan criminal law that he is not subject to, has not been charged with, and has not violated." The overbreadth doctrine is grounded in the idea that "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

In the First Amendment context, a free speech litigant can often raise the rights of third parties, even when she has no special relationship with those third parties, by using overbreadth doctrine. *See, e.g.*, *Peterson v. Nat'l Telecomm. & Info. Admin.*, 478 F.3d 626, 633-34 (4th Cir. 2007) ("The Supreme Court has relaxed standing requirements for overbreadth challenges to allow litigants 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'") (quoting *Broadrick*, 413 U.S. at 612))).

## VIII.   DEFENDANT MAKES NO ARGUMENT AS TO THE APPLICATION OF THE SEDUCTION STATUTE

To assert a facial overbreadth claim, plaintiffs must demonstrate that the statute being challenged (1) "could never be applied in a valid manner," or (2) that even though it may be validly applied to some, "it nevertheless is so broad that it 'may inhibit constitutionally protected speech of third parties.'" *New York State Club Ass'n, Inc. v. City of New Yor*k, 487 U.S. 1, 11

(1988). The Supreme Court has noted that this latter kind of facial challenge is properly thought of as "*an exception to ordinary standing requirements.*" *Id.* at 11 (emphasis added).

"[T]he first kind of facial challenge will not succeed unless the court finds that every application of the statute created an impermissible risk of suppression of ideas." *Id.* "[T]he second kind of facial challenge will not succeed unless the statute is 'substantially' overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.*

With regard to the first kind of facial challenge, Plaintiff has asserted that the Seduction statute could never be applied in a valid manner. "Plaintiff is arguing that the Seduction statute is on the books is because it is used as a plea bargaining tool because it would be invalidated by a court if it were to be used at trial." (ECF No. 31 at 27).

> "The overbreadth doctrine is specifically designed to protect against the chilling effect on protected speech that results when overbroad laws provide prosecutors with unfettered discretion. *See, e.g.*, Hill, 482 U.S. at 465. The Seduction statute allows prosecutors unfettered discretion as to who they may charge under the statute. As one prosecutor noted, it allows for a "reasonable resolution" – meaning that when the prosecutor determines a party is guilty of a crime (i.e., rape) but cannot prove it at trial, they can use the Seduction statute." (*Id.* at 19).

Defendant has not made any argument as to how the Seduction statute could be applied in a valid manner. Moreover, Plaintiff has made arguments that the Seduction statute is so broad that it inhibits the constitutionally protected speech of third parties.

With regard to the second kind of facial challenge, Plaintiff has asserted that the Seduction statute is so broad that it inhibits the constitutionally protected speech of third parties. "The Seduction statute does not have a consent element. Accordingly, consensual sex is included within the Seduction statute's plainly legitimate sweep, and thus the statute has a substantial number of its applications which are unconstitutional." (*Id.* at 14). Defendant has not made any

19

argument as to how the Seduction statute does not inhibit constitutionally protected speech of third parties.

## IX.   ASSUMING *ARGUENDO* THAT THIS IS A PRE-ENFORCEMENT CHALLENGE, PLAINTIFF STILL HAS STANDING

This is not a pre-enforcement suit because the Seduction statute has already been enforced. "In 2018, three former Michigan State University ("MSU") football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) accepted to a plea bargain for violating the Seduction statute. Each of the aforementioned players acknowledged they knew that the accuser was unmarried when they engaged in oral sex with her." (ECF No. 13 at 10). "Moreover, a legal scholar has noted that a search of the Seduction statute resulted in over 30 notes between 2002 and 2008." (ECF No. 13 at 13).

Assuming *arguendo* that it is a pre-enforcement suit, the Court would still be able to hear this suit. "It is well established that 'pre-enforcement challenges … are within Article III." *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012). "[T]he Supreme Court repeatedly found standing to mount pre-enforcement challenges to laws that had never been *enforced." Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) (emphasis added).

Defendant erroneously argues that "[b]efore a plaintiff could try to show he faces a credible threat of prosecution for seduction, he must show actions by a third party." (ECF No. 27 at 11/ECF No. 24 at 10–11). Defendant goes on to explain how factors must directly involve Plaintiff. This would then not be a challenge under the overbreadth doctrine, but rather an as-applied challenge since it would directly involve Plaintiff. There is no such thing as an as-applied overbreadth challenge. *See, e.g.*, *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (asserting that "[a]ll overbreadth challenges are facial challenges").

The Supreme Court has trumpeted "[s]pecifically, we have held that a plaintiff satisfies

20

the injury–in–fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 134 S. Ct. at 2342 (2014) (quoting *Babbitt*, 442 U.S. 289, 298 (1989), and citing *Steffel*, 415 U.S. at 459). Plaintiff has satisfied these requirements. Plaintiff has an intention to engage in a course of conduce affected with a constitutional interest, but is proscribed by the Seduction statute. And there exists a credible threat of prosecution thereunder (*See supra* § III, A. There Are Two Current Instances Where There is a Credible Threat of Prosecution Under the Seduction Statute). Accordingly, Plaintiff reasonably fears that his conduct is prohibited, and Plaintiff reasonably fears the threat of prosecution.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' motion to dismiss in its entirety.

Respectfully submitted,

  /s/ Max Birmingham
Max Birmingham (D.C. Bar # 1618157)
**PRO SE**
323 E 108th St.
Apt. 24
New York, NY 10029
(617) 756–5473
maxbirmingham@gmail.com

Dated: June 30, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed on June 30, 2020, via the CM / ECF system, and that the foregoing has been served via email on Defendant.

Respectfully submitted,

  /s/ Max Birmingham
Max Birmingham (D.C. Bar # 1618157)
**Pro Se**
323 E 108th St.
Apt. 24
New York, NY 10029
(617) 756–5473
maxbirmingham@gmail.com

Dated: June 30, 2020

22