**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAX BIRMINGHAM,

    Plaintiff,

                                      Case No: 1:20-cv-00329

v.

                                      **Oral argument requested**

DANA NESSEL,

    Defendant.

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………………..……………………………………...…………iii

**ARGUMENT**…………………………………………………………………………………………..1

    **I.    PLAINTIFF HAS STANDING TO BRING FORTH HIS CLAIMS UNDER THE OVERBREADTH DOCTRINE** ……………..………………………………..1

        **A.  Overbreadth Doctrine Standing Requirements**……………………………....1

    **II.   THE SEDUCTION STATUTE HAS TO BE CHALLENGED UNDER THE OVERBREADTH DOCTRINE, OTHERWISE IT WILL REMAIN ON THE BOOKS AND CONTINUE TO VIOLATE PEOPLE'S RIGHTS** …...…………..4

    **III.  A STATUTE ABROGATES THE COMMON LAW**……………………………..5

    **IV.  THE STATUTE OF FRAUDS PLAINLY STATES THAT THERE IS A WRITTEN REQUIREMENT FOR A PROMISE OF MARRIAGE**………..…..11

**CONCLUSION**……………………………………………………………………………………...11

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adult Video Ass'n v. U.S. Dep't of Justice*,
    71 F.3d 563 (6th Cir. 1995)……………………………………………....…….……...1

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 38 (1963)……………………………………………………………………...3

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
    447 U.S. 557 (1980)……………………………………………..……….…………....4

*Church of the Holy Trinity v. United States*,
    143 U.S. 457 (1892)…………………………………………………………….......…10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)……………………………………….…..……………….......…2

*Connecticut Distrib. Co. v, Holder*,
    557 F.3d 321 (6th Cir. 2009)……………………………………….……..……......1, 4, 5

*Dambrot v. Central Michigan University*,
    55 F.3d 1177 (6th Cir. 1995)……………………………………………….…….…...1

*Ex parte Levitt*,
    302 U.S. 633 (1937)……………………………………………………………….......2

*Gamble v. United States*,
    587 __ U.S. (2019)...........……………………………………..…………………….9, 10

*Laird v. Tatum*,
    408 U.S. 1 (1972)……………………………………………..…………………….......2

*Levin v. Harleston*,
    996 F.2d U.S. 85 (2nd Cir. 1992)…………….....………………………….……1, 2

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………………………….……1, 2

*Massachusetts v. Oakes*,
    491 U.S. 576 (1989)…………………………………………….……………….….2, 4

*Morrison v. Bd. of Educ. of Boyd Cty.*,
    521 F.3d 602 (6th Cir. 2008)……………………………………………….......2, 3

*Okwedy v. Molinari.*,
    333 F.3d 339 (2nd Cir. 2003)……………………………………………………….......3

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989)……………………………………………………….................10

*Speech First, Inc. v. Schlissel*,
    939 F.3d 756 (6th Cir. 2019)……………………………………………….…......*passim*

*Steffel v. Thompson*,
    415 U.S. 452 (1974)……...…………………………………….…………………….......4

*United States v. Schooner*,
    5 U.S. (1 Cranch) 103………..……………………………………………………….....5

*Vill. of Schaumberg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980)……………………………………………………………….…....2

*Welch v. Texas Dept. of Highways and Public Transp.*,
    483 U.S. 468 (1987)……………………………………………………………...……10

**STATE CASES**

*Birchfield v. Birchfiel*,
    217 P. 616 (N.M. 1923)……………………………………………………………...7

*Brigance v. Velvet Dove Restr., Inc.*,
    725 F.2d 300 (Okla. 1986)……………………………………………………………...7

*Farmers Mut. Fire Ins. Co. of Salem v. New Jersey Property-Liability Ins. Guar. Ass'n*,
    74 A.3d 860 (2013)……………………………………..……………………….......5, 6

*Guild v. Eager*,
    17 Mass. 615 (1822)………………………………………………………….…..….9

*Heiner v. Simpson*,
    23 P.3d l041 (Utah 200l)……………………………………………………………..7

*Hunt v. Chang*,
    594 P.2d 118 (Haw. 1979)……………………………………………………………...7

*Hutelmyer v. Cox*,
    514 S.E.2d 554 (N.C. Ct. App. 1999)……………………………………………..7

*Kirk v. Koch*,
    607 So.2d 1220 (Miss. 1992)………………………………………………….…..…7

*McDowell v. Oyer*,
    21 Pa. 417 (1853)……………………………………………………………………….9

*People v. De Fore*,
    31 N.W. 585 (1887)………………………………………………………….....….......5, 7

*People v. Bressler*,
    91 N.W. 639 (1902)………………………………………………………….…........5, 7

*Suliveres v. Commonwealth*,
    865 N.E.2d 1091 (Mass. 2007)……………………………………………...………11

*Van Vooren v. Schwarz*,
    899 S.W.2d 594 (Mo. Ct. App. 1995)………………………………………………..7

*Veeder v. Kennedy*,
    1999 S.D. 23, 589 N.W.2d 610…………………………………………………………7

**UNITED STATES CONSTITUTION**

U.S. CONST. amend. I……………………………………………………….……....*passim*

U.S. CONST. amend. XIV………………………………………………………….*passim*

**STATE STATUTES**

MICH. COMP. LAWS § 566.132(1)(c)……………………………………………………….11

MICH. COMP. LAWS § 750.250b……………………………………………………………….11

MICH. COMP. LAWS § 750.250c……………………………………………………………….11

MICH. COMP. LAWS § 750.250d……………………………………………………………….11

MICH. COMP. LAWS § 750.250e……………………………………………………………….11

MICH. COMP. LAWS § 750.532……………………………………………………………*passim*

**OTHER AUTHORITIES / NEWS ARTICLES**

BLACK'S LAW DICTIONARY……………………………………………….……….……6, 7, 10

Clement Knox,
    *When U.S. Laws Punished Men for 'Seduction,' Women Were the Ones Who Got Judged*,
    *available at* https://time.com/5776805/seduction-law-history/ (last accessed Jul. 17,
    2020)……………………………………………………………………………....…….6

The Hon. Judith S. Kaye,
 *State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions*, 70 N.Y.U. L. REV. 1 (1995)……………………………………….……5

The Hon. Robert P. Young, Jr.,
 *A Judicial Traditionalist Confronts the Common Law*, 8 TEX. L. & POL. 299 (1994)……6

Justice Oliver Wendell Holmes,
 *The Common Law* 5 (Little, Brown and Company 1963)…………………………………6

Kyle Graham,
 *Why Torts Die*, 35 FLA. ST. U. L. REV. 359 (2008)……………………………….…6, 7

OXFORD ENGLISH DICTIONARY………………….…………...………………………………6

Paul Leicester Ford
 *Letter from Thomas Jefferson to Phillip Mazzei (Nov. 1785)*, in 4 The Works of Thomas Jefferson 473, 476 (Paul Leicester Ford ed., 1904) (*available at* https://founders.archives.gov/documents/Jefferson/01-09-02-0056)................................5

Patrick Brode
 *Courted and Abandoned: Seduction in Canadian Law*, ISBN 9780802037503 (2002)…..7

*Rape by Fraud or Impersonation*,
 91 A.L.R.2d 591 § 2 (2009)……………………………………………………….10, 11

**ARGUMENT**

**I.   PLAINTIFF HAS STANDING TO BRING FORTH HIS CLAIMS UNDER THE OVERBREADTH DOCTRINE**

"[T]he whole point of a facial challenge, or what the courts in the First Amendment context have come to call an overbreadth challenge, is to permit the claimant to strike the law in its entirety based on its application to other individuals not before the court. The overbreadth doctrine thus changes the customary rules of constitutional litigation: It relaxes the general prohibition against vicarious litigation by allowing claimants to assert the rights of third parties, and it permits a court to strike a law in its entirety even though it legitimately may be enforced in some other settings." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335–36 (6th Cir. 2009). [I]n the First Amendment context, the preference for as-applied challenges is relaxed. Sometimes facial challenges are even "*required* in free-speech cases." *Speech First, Inc. v. Schlissel*, 939 F. 3d 756, 776 n.2 (6th Cir. 2019) (citing *Connection Distrib. Co.*, 557 F.3d at 335 (6th Cir. 2009) (emphasis in original)).

"The distinction between facial and as-applied challenges bears legal significance when assessing standing. In *Dambrot v. Central Michigan University*, the court found that Central Michigan students had standing to challenge their university's discriminatory-harassment policy. See 55 F.3d 1177, 1182, 1192 (6th Cir.1995). The students hadn't been punished under the policy, nor had the university acted concretely so as to threaten them with punishment. *See id.* at 1182. Yet, because the students were bringing a facial overbreadth challenge, the court found that the students had standing, even if they had "not yet [been] affected by [the policy.]" *Id. See also Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 566–67 (6th Cir. 1995) (drawing the same distinction between facial challenges and as-applied challenges)." *Speech First, Inc.*, 939 F. 3d at 776–67.

**A.**   *Overbreadth Doctrine Standing Requirements*

"Relevant here, for litigants to have standing to sue in their own right, they "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of*

1

*Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). "The party invoking federal jurisdiction bears the burden of establishing" injury-in-fact." *Id.* at 561. *Speech First, Inc.*, 939 F. 3d at 764.

"The injury-in-fact requirement means that litigants will have standing to challenge government action only when it restricts their own constitutionally protected activities. *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980). *But the Supreme Court has recognized an exception to this general principle for First Amendment challenges alleging that a statute or regulation is overbroad. Vill. of Schaumburg*, 444 U.S. at 634 ("[A] litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.")." *Speech First, Inc.*, 939 F. 3d at 764 (emphasis added).

"Even where a litigant challenges a law or regulation as overbroad, that litigant must still "show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action." *Laird v. Tatum*, 408 U.S. 1, 13 (1972) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). We use the term "objective chill" to refer to laws or regulations that produce direct injuries and the term "subjective chill" where a law or regulation does not." *Speech First, Inc*, 939 F. 3d at 764.

"Under the First Amendment, mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (quoting *Laird*, 408 U.S. at 13). The regulation need not amount to a "direct prohibition against the exercise of First Amendment rights" to be constitutionally objectionable. Still, there must be something more than "the individual's knowledge that a governmental agency was engaged in certain activities or . . . the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Laird*, 408 U.S. at 11. We have noted that "the mere existence, without more, of a governmental investigative and data-gathering activity" is insufficient to present anything more than allegations of a subjective chill of First Amendment speech. *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d

2

602, 608 (6th Cir. 2008). "In order to have standing, therefore, a litigant alleging chill must still establish that a concrete harm—i.e., enforcement of a challenged statute—occurred or is imminent." *Id.* at 610. That an official or regulator lacks actual authority to punish an individual, although relevant to the question of concrete harm, is not dispositive. Even if an official lacks actual power to punish, the threat of punishment from a public official who appears to have punitive authority can be enough to produce an objective chill. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963). *See also Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003); *Levin v. Harleston*, 966 F.2d 85, 88–89 (2d Cir. 1992). Governmental activity constitutes an injury-in-fact when "the challenged exercise of governmental power [is] regulatory, proscriptive, or compulsory in nature, and the complainant [is] either presently or prospectively subject to the regulations, proscriptions, or compulsions that he [is] challenging." *Laird,* 408 U.S. at 11." *Speech First, Inc*, 939 F. 3d at 764–65.

The Seduction statute is an invasion of a legally protected interests. Plaintiff has made arguments as to how the Seduction statute violates the First Amendment and the Fourteenth Amendment. (*See, i.e.*, ECF No. 13 – Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction; ECF No. 23 – Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief; ECF No. 31 – Plaintiff's Reply to Defendant's Response to the Motion for Preliminary Injunction; ECF No. 32 – Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss; ECF No. 33 – Plaintiff's Reply to Defendant's Response to the Motion for Leave to File a Second Amended Complaint). Therefore, Plaintiff will not burden the Court with a repetition of that discussion here.

Plaintiff has standing to challenge the Seduction statute because he faces an objective chill based on the text and application of the statute. Plaintiff establishes a concrete harm ("a concrete harm—i.e., enforcement of a challenged statute—*occurred* or is imminent") since in 2018 "three former MSU football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) [] pleaded guilty to [the] Seduction [statute]." (ECF No. 31 at 16). "Moreover, a legal scholar has noted that a search of the Seduction statute resulted in over 30 notes between 2002 and 2008." (ECF No. 32 at 28).

3

"[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Accordingly, Plaintiff does not have expose himself to actual arrest or prosecution to be entitled to challenge the Seduction statute. Despite the ruling of the U.S. Supreme Court, Defendant alleges that "[t]he only way Birmingham could allege that he can show activity proscribed by the statute is if he claims that he will have sexual intercourse in Michigan, he will promise marriage to obtain the intercourse, makes the promise at the time of the intercourse, and the person with whom he has intercourse relies on the promise to marry." (ECF No. 34 at 7). To satisfy Defendant, Plaintiff claims he will have sexual intercourse in Michigan, he will promise marriage to obtain the intercourse, he will makes the promise at the time of the intercourse, and the person with whom he has intercourse relies on the promise to marry.

II. **THE SEDUCTION STATUTE HAS TO BE CHALLENGED UNDER THE OVERBREADTH DOCTRINE, OTHERWISE IT WILL REMAIN ON THE BOOKS AND CONTINUE VIOLATING PEOPLE'S RIGHTS**

"Overbreadth is a judicially created doctrine designed to prevent the chilling of protected expression. *Massachusetts v. Oakes*, 491 U.S. 576 (1989). The doctrine of overbreadth derives from the recognition that an unconstitutional restriction may deter protected speech by parties not before the court and thereby escape judicial review. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980)." (ECF No. 11 at 1–2).

Ingham County Prosecutor Carol Siemon stated, in part, "*The plea to seduction is a tool that we have as prosecutors*, but it is an imperfect tool. It allows the criminal justice system to acknowledge the victim, *and it provides an incentive for that offender to plea, in particular, because it's not an offense that requires that they register as a sex offender.*" (ECF No. 32 at 9). "[A]ssistant Ingham County Prosecutor Sam Smith … explained that in the case that appeared in the newspaper, simple seduction wasn't the original charge. The man was charged with a more serious offense. The seduction plea became, as Smith put it, the "resolution" to the case. That's most often how it's employed, Smith said — as a "reasonable resolution." *Id.*

"Sometimes facial challenges are even "*required* in free-speech cases." *Speech First, Inc.*

*v. Schlissel*, 939 F. 3d 756, 776 n.2 (6th Cir. 2019) (citing *Connection Distrib. Co.*, 557 F.3d at 335 (6th Cir. 2009) (emphasis in original)). "The Seduction statute has to be challenged under the overbreadth doctrine, otherwise it will never be challenged. The Seduction statute is used as a "plea bargaining tool." (ECF No. 32 at 9). There has not been a case regarding the Seduction statute in over 115 years (*See infra* § III. A Statute Abrogates the Common Law (discussing *People v. Bressler*, 91 N.W. 639 (1902); *People v. De Fore*, 31 N.W. 585 (1887))). As prosecutors have declared that the Seduction statute is a "plea bargaining tool" and there has not been a trial over the statute in such an extended period of time, this is likely to continue in perpetuity unless the Court reviews the constitutionality of the Seduction statute on the merits under this facial challenge via the overbreadth doctrine.

### III.    A STATUTE ABROGATES THE COMMON LAW

BLACK'S LAW DICTIONARY defines common law as "[t]he body of law derived from judicial decisions, *rather than from statutes* or citations." (emphasis added). The Seduction statute (MICH. COMP. LAWS § 750.532), therefore, would abrogate any alleged common law Seduction. Former Chief Judge of the New York Court of Appeals Judith Kaye declares that state statutes codify common law causes of action and abrogate common law doctrines. Judith S. Kaye, *State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions*, 70 N.Y.U. L. REV. 1, 20–21 (1995).

Citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 and a letter from Thomas Jefferson (*See* Letter from Thomas Jefferson to Phillip Mazzei (Nov. 1785), in 4 The Works of Thomas Jefferson 473, 476 (Paul Leicester Ford ed., 1904) (*available at* https://founders.archives.gov/documents/Jefferson/01-09-02-0056)), the New Jersey Supreme Court has promulgated that state statutes override common law principles. The court explained:

> "The common law is the collection of judicially crafted principles–developed in the crucible of the adversarial process–that govern matters that do not fall within the realm occupied by the Legislature. Legislation has primacy over areas formerly within the domain of the common law. Legislation represents the will of the people as enacted through their elected representatives. *Only the Constitution–our organic charter–is paramount to legislative enactments.*" *Farmers Mut. Fire Ins. Co. of Salem v. New Jersey Property-Liability Ins. Guar. Ass'n*, 74 A.3d 860, 873 (2013) (emphasis added).

5


Thus, "[l]egislative enactments are never subservient to the common law when the two are in conflict with each other." *Id.*

Former Chief Justice of the Michigan Supreme Court Robert Young, Jr., stated that the common law allows courts to "discover, create, or modify common law rules-or policy-is entirely inconsistent with normative constitutional policies and principles" with the authority in the other branches of government. *See, i.e.,* Robert P. Young, *A Judicial Traditionalist Confronts the Common Law,* 8 TEX. L. & POL. 299 (2004) ("I tend to think of the common law as a drunken, toothless ancient relative, sprawled prominently and in a state of nature on a settee in the middle of one's genteel garden party.").

Former Supreme Court Justice Oliver Wendell Holmes explained that "[t]he life of the law has not been logic; it has been experience." Oliver Wendell Holmes, *The Common Law* 5 (Little, Brown and Company 1963). Justice Holmes further explained that common law is not governed by logic, but rather by the "*felt necessities of the time*, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices, which judges share with their fellow-men, have had a good deal more to do with the syllogism in determining the rules by which men should be governed." *Id.* (emphasis added). Even going by the standard Justice Holmes set forth, the Seduction statute should be abolished. The U.S. common law was imported from England. 2 OXFORD ENGLISH DICTIONARY 692-93 (1893) ("In *U.S.*: the body of English legal doctrine which is the foundation of the law administered in all the States settled from England, and those formed by later settlement or division from them."). In mid–19th century, the U.S. imported heartbalm torts (alienation of affection, breach of promise to marry, criminal conversation, and seduction) from England. (*Available at* https://time.com/5776805/seduction-law-history/.)

In 1935, a woman legislator from Indiana, Roberta West Nicholson, introduced a heartbalm statute that abolished the heartbalm torts in the Hoosier state. Kyle Graham, *Why Torts Die*, 35 FLA. ST. U. L. REV. 359, 416 (2008). A heartbalm statute is:

> "[A] state law that abolishes the rights of action for monetary damages as solace for the emotional trauma occasioned by a loss of love and relationship.

> The abolished rights of action include alienation of affections, breach of promise to marry, criminal conversation, and seduction of a person over the legal age of consent. Many states today have enacted heartbalm statutes primarily because of the highly speculative nature of the injury *and the potential for abusive prosecution*, as well as difficulties of determining the cause of loss." BLACK'S LAW DICTIONARY (emphasis added).

"She [Roberta West Nicholson] became the face of the antiheartbalm movement—or, in her words, "the standard bearer of a crusade" against the torts." Kyle Graham, *Why Torts Die*, 35 FLA. ST. U. L. REV. 359, 416 (2008). In 1963, England abolished all of their heartbalm torts. Patrick Brode, *Courted and Abandoned: Seduction in Canadian Law*, ISBN 9780802037503 (2002). As Justice Holmes noted that the common law is driven by the "*felt necessities of the time*," today, there are only a handful of states that still allow actions for heartbalm torts today: Hawaii (*Hunt v. Chang*, 594 P.2d 118, 123 (Haw. 1979); Mississippi (*Kirk v. Koch*, 607 So.2d 1220, 1222 (Miss. 1992); Missouri (*Van Vooren v. Schwarz*, 899 S.W.2d 594, 595 (Mo. Ct. App. 1995)); New Mexico (*Birchfield v. Birchfiel*, 217 P. 616, 618-19 (N.M. 1923), North Carolina (*Hutelmyer v. Cox*, 514 S.E.2d 554, 560 (N.C. Ct. App. 1999); South Dakota (*Veeder v. Kennedy*, 1999 S.D. 23, 589 N.W.2d 610); and Utah (*Heiner v. Simpson*, 23 P.3d l041, 1042 (Utah 200l). Each of these states only allows for these heartbalm torts actions in *civil* actions, and not *criminal* actions. Accordingly, assuming *arguendo* that there is common law Seduction, the common law today would not allow for a criminal prosecution of seduction for by a false promise of marriage made by the man at the time of consent.

The Oklahoma Supreme Court explained, "inherent in the common-law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis*, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying common-law to new situations as the need arose." *Brigance v. Velvet Dove Restr., Inc.,* 725 F.2d 300 (Okla. 1986).

Defendant points to a legal guide which cites two cases (*People v. Bressler*, 91 N.W. 639 (1902); *People v. De Fore*, 31 N.W. 585 (1887)) on Seduction. Both cases are each over 115 years. There is no common law Seduction. The fact that Defendant relies on a legal guide rather than the cases themselves speaks volumes. Defendant does not even cite the text of either case,

7

nor make any attempt to apply either of the facts of the cases with the facts Plaintiff stated or analyze the constitutional claims Plaintiff asserts. As common law is "the collection of judicially crafted principles," Plaintiff illustrated how consent is not interpreted by a judge as an element of the Seduction statute. (ECF No. 23 at 4–6):

> MR. DONNIE CORLEY: "Yeah, I understand that's wrong, but we actually understand all that what you were saying. I actually understand that part of what you are asking me, but I didn't just do anything wrong as in what people are painting the picture to see that we did."
>
> MR. JOHN SHEA (counsel for Mr. Corley): "… He objects to being labeled a rapist."
>
> JUDGE ROSEMARIE AQUILINA: "*You understand how people could come to that conclusion.*" *Id.* (emphasis added).

---

> MS. MARY CHARTIER (counsel for Mr. Vance): "I want the record to be made clear that Mr. Vance did not rape anyone on that night. He pled guilty to Seduction, which is having sex with an unmarried woman, which is what happened. And which is what he told the police happened. But I do not believe that I can stand in this courtroom while Mr. Vance is repeatedly labeled a rapist."
>
> JUDGE ROSEMARIE AQUILINA: "Do you think you did anything wrong?"
>
> MR. DEMETRIC VANCE: "No, your honor."
>
> JUDGE ROSEMARIE AQUILINA: "Why are we here?"
>
> MS. MARY CHARTIER: ". . . I am speaking on behalf of myself about, again, things that are verified facts from the record. … But I do believe it is important that Mr. Vance not just have to stand here and be labeled a rapist when that is not what happened."
>
> JUDGE ROSEMARIE AQUILINA: "*Well, classify it what, how you might counsel, but sex without consent is rape in this country.* Sir, did you do something wrong?" (emphasis added).
>
> MR. DEMETRIC VANCE: "No, your honor."
>
> JUDGE ROSEMARIE AQUILINA: "No?"
>
> MS. MARY CHARTIER: "The issue is not one of consent. *Seduction does not require consent or lack of consent in order for the elements to be met.*" (emphasis added).
>
> JUDGE ROSEMARIE AQUILINA: "Did you have sex with an unmarried woman?"
>
> MR. DEMETRIC VANCE: "Yes, your honor."

8

> JUDGE ROSEMARIE AQUILINA: "*Did you know she didn't want sex.*" (emphasis added).
>
> MR. DEMETRIC VANCE: "*She was consensual.*" *Id*. (emphasis added).

Judge Aquilina repeatedly held that the accuser did not consent, and noted that a reasonable person may infer that the three former MSU football players (Mr. Donnie Corley, Mr. Josh King, and Mr. Demetric Vance) are rapists.

"Moreover, a legal scholar has noted that a search of the Seduction statute resulted in over 30 notes between 2002 and 2008." (ECF No. 13 at 13). Defendant does not cite any of these instances in which a "promise of marriage" was made by anyone prosecuted under the Seduction statute. Accordingly, assuming a*rguendo* there is common law Seduction, this would mean that there is no longer a requirement of a broken promise of marriage. Assuming *arguendo* that there is common law Seduction, the fact that there are only two cases over such a lengthy timeframe itself is evidence that the common law Seduction should be abrogated by this Court. As common law is a "dynamic principle", the lack of case law, the country which we imported the Seduction law from abolishing it, and most U.S. States abolishing the law, is more than sufficient to evidence that the Seduction statute should be abolished because of the "*felt necessities of the time*."

Even assuming *arguendo* there is common law Seduction, this Court has the power to override it. "[T]he common law did not view precedent as unyielding when it was "most evidently contrary to reason" or "divine law." Blackstone 69–70." *Gamble v. United States*, 587 U.S. __ (2019). "When a "former decision is manifestly absurd or unjust" or fails to conform to reason, it is not simply "bad law," but "not law" at all. Blackstone 70 (emphasis). This view—that demonstrably erroneous "blunders" of prior courts should be corrected—was accepted by state courts throughout the 19th century. *See, e.g.*, *McDowell v. Oyer*, 21 Pa. 417, 423 (1853); *Guild v. Eager*, 17 Mass. 615, 622 (1822)." *Id.* The Seduction statute is not just "bad law"–it is "not law" at all. Rather, it is a plea bargaining tool. (*The plea to seduction is a tool* that we have as prosecutors, but it is an imperfect tool. It allows the criminal justice system to acknowledge the victim, and it provides an incentive for that offender to plea, in particular because it's not an offense that requires that they register as a sex offender. (ECF No. 13 at 4) (emphasis added)).

9

Justice Alito articulated that, with regard to common law, "something more than 'ambiguous historical evidence' is required before we will 'flatly overrule a number of major decisions of this Court.'" *Gamble*, 587 U.S. __ (2019) (citing *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 479 (1987). In a concurring opinion in *Gamble*, Justice Thomas further elucidated that with the genesis of the U.S. Constitution, "rules were codified into "positive law," which "removes most (if not all) of the force that *stare decisis* held in the English common-law system." *Id.* Thus, any interpretation of consent as an element of the Seduction statute would be overridden today by the advent of the U.S. Constitution and the text of the Seduction statute.

Assuming *arguendo* there is common law Seduction, it would be abrogated as its sweeping applications violate the U.S. Constitution. Plaintiff has made arguments as to how the Seduction statute violates major decisions of the U.S. Supreme Court as well as violates the U.S. Constitution. (*See, i.e.*, ECF No. 13 – Plaintiff's Memorandum in Support of the Motion for Preliminary Injunction; ECF No. 23 – Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief; ECF No. 31 – Plaintiff's Reply to Defendant's Response to the Motion for Preliminary Injunction; ECF No. 32 – Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss; ECF No. 33 – Plaintiff's Reply to Defendant's Response to the Motion for Leave to File a Second Amended Complaint). Therefore, Plaintiff will not burden the Court with a repetition of that discussion here.

The U.S. Supreme Court has held that statute's literal textual meaning must be followed unless it will lead to absurd results. *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989). As consent is not in the text of the Seduction statute, it cannot be argued that consent may be read into the statute by common law. *See Common Law*, BLACK'S LAW DICTIONARY. Courts have repeatedly rejected Defendant's view of consent in the Seduction statute ("Under this statute the offense is committed if the man has carnal intercourse, to which the woman assented, if such assent was obtained by a promise of marriage, made by the man at the time, and to which, without such promise, she would not have yielded."). (ECF No. 34 at 6). "[T]he prevailing view is that upon

10

proof that consent to intercourse was given, even though [procured by] fraud . . . , a prosecution for rape cannot be maintained." *Rape by Fraud or Impersonation*, 91 A.L.R.2d 591 § 2 (2009) (citations omitted). The Supreme Judicial Court of Massachusetts noted that "[f]raudulently obtaining consent to sexual intercourse does not constitute rape." *Suliveres v. Commonwealth*, 865 N.E.2d 1086, 1091 (Mass. 2007). Furthermore, Defendant does not explain how their reading of consent into the Seduction statute does not conflict with state rape laws. *See* MICH. COMP. LAWS §§§§ 750.250b, 750.250c, 750.250d, 750.250e.

### IV. THE STATUTE OF FRAUDS PLAINLY STATES THAT THERE IS A WRITTEN REQUIREMENT FOR A PROMISE OF MARRIAGE

Michigan's state Statute of Frauds states:

> (1) In the following cases an agreement, contract, or *promise* is void unless that agreement, contract, or *promise*, or a note or memorandum of the agreement, contract, or *promise*, *is in writing and signed with an authorized signature by the party to be charged with the* agreement, contract, or *promise*:
>
> (c) An agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry." MICH. COMP. LAWS 566.132 (1)(c) (emphasis added).

Defendant alleges that the Statute of Frauds "is not relevant because there is no allegation that anyone is using the seduction statute to enforce an agreement to marry." (ECF No. 34 at 6, n. 2). Defendant misconstrues Plaintiff's argument. Plaintiff has never argued that a party has to enforce the promise of marriage if charged or threatened with prosecution under the Seduction statute. Plaintiff argued that there is no "broken promise" requirement under the Seduction statute, but if there was such a requirement said promise would need to be in writing. If the "broken promise" of marriage is not in writing, it violates the Statute of Frauds, and thus the promise is void. Accordingly, if there is no "promise" of marriage in writing, then a person may not be charged under the Seduction statute according to Defendant's alleged "broken promise" requirement since the promise would be void.

## CONCLUSION

For all these reasons, and those stated in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss (ECF No. 32), the Court should deny the Defendants' motion to dismiss in its

11

entirety.

                        Respectfully submitted,

                          /s/ Max Birmingham
                        Max Birmingham (D.C. Bar # 1618157)
                        **PRO SE**
                        323 E 108th St.
                        Apt. 24
                        New York, NY 10029
                        (617) 756–5473
                        maxbirmingham@gmail.com

Dated: July 17, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been filed on July 17, 2020, via the CM / ECF system, and that the foregoing has been served via email on Defendant.

                                  Respectfully submitted,

                                  /s/ Max Birmingham
Max Birmingham (D.C. Bar # 1618157)
**PRO SE**
323 E 108th St.
Apt. 24
New York, NY 10029
(617) 756–5473
maxbirmingham@gmail.com

Dated: July 17, 2020